**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS ARRIAGA, MILTON JEREZ, ANDRES MEJIA, EVER DAVID CRUZ VARGAS, and CARLOS CASTRO, on behalf of themselves and others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> ANTHONY LOGISTICS OF HUDSON COUNTY LLC, 2SH SERVICES LLC d/b/a ANTHONY LOGISTICS OF HUDSON COUNTY LLC, and SANTOS HERNANDEZ, individually, <br><br> *Defendants*. | Civil Action No: 22-495 (SDW) (LDW) <br><br> **OPINION** <br><br><br> March 30, 2023 |

**WIGENTON**, District Judge.

Plaintiffs Carlos Arriaga, Milton Jerez, Andres Mejia, Ever David Cruz Vargas, and Carlos Castro ("Plaintiffs") bring this putative class action against Defendants Anthony Logistics of Hudson County LLC ("ALHC"), 2SH Services LLC ("2SH Services"), and Santos Hernandez ("Hernandez," together with ALHC and 2SH Services, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a, *et seq.*; and the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1, *et seq.* (D.E. 32 ("Amended Complaint")). Before this Court is Plaintiffs' Motion for Conditional Certification and Facilitation of Notice Pursuant to 29

1

U.S.C. § 216(b).  (D.E. 40 ("Motion").)  This Court considered the parties' submissions[1] and decided the Motion without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b).  For the reasons stated herein, Plaintiffs' Motion is **GRANTED**.

## I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY[2]

This action arises from Defendants' alleged refusal to pay overtime wages to Plaintiffs. Defendant Hernandez "own[s] and control[s]" ALHC and 2SH Services, trucking companies that deliver goods, including furniture. (D.E. 32 ¶¶ 44–46.)  Plaintiffs were truck drivers and truck driver helpers ("helpers")[3] for Defendants.  (*Id.* ¶¶ 8, 11, 14; D.E. 35 at 1; D.E. 39 at 1.)  Plaintiffs allege that Defendants, in an effort to minimize labor costs, engaged in an intentional and unlawful corporate practice by failing to keep accurate records of hours worked by employees and refusing to pay employees the applicable overtime rate, *i.e.*, one and one-half times the employees' regular hourly wage.  (D.E. 32 ¶¶ 37–38, 49–50.)  Plaintiffs have submitted several declarations in which they each describe their experiences working for Defendants.  (D.E. 42–45.)

In their Declarations, Plaintiffs Arriaga, Cruz Vargas, and Jerez explain that they each served as helpers for Defendants.  (D.E. 42 ¶ 2; D.E. 43 ¶ 4; D.E. 45 ¶ 2.)  Arriaga, Cruz Vargas, and Jerez assert that they worked for Defendants for more than 40 hours per week, and that they

---

[1] The submissions consist of Plaintiffs' motion, (D.E. 40); the accompanying Declarations and exhibits thereto, (D.E. 41–46); Plaintiffs' brief in support of the motion, (D.E. 47); Defendant's brief in opposition, (D.E. 50); the Declaration of Santos Hernandez, (D.E. 49); and Plaintiffs' reply, (D.E. 51).  Plaintiffs initially failed to file a proposed order with its Motion, and Judge Vazquez directed Plaintiffs to do so by February 8, 2023.  (D.E. 66.)  Plaintiffs complied.  (D.E. 69.)

[2] The facts largely derive from Plaintiffs' Amended Complaint, (D.E. 32), and Plaintiffs' Declarations submitted in support of the Motion, (D.E. 42–45).  D.E. 46 is a Declaration of Plaintiff Mejia Andres, which appears to be a duplicate of D.E. 44.

[3] Truck drivers "driv[e] to and from a location and . . . load[] and unload[] furniture." (*Id.* ¶ 108.)  Helpers "assist[] the [truck] drivers to load, unload, and move furniture," and "occasionally . . . assemble the furniture upon delivery." (*Id.* ¶¶ 54–55, 84.)

believe Defendants did not pay them overtime.  (D.E. 42 ¶¶ 4–9, 12; D.E. 43 ¶¶ 5–12; D.E. 45 ¶¶ 4–9.)  Arriaga, Cruz Vargas, and Jerez further allege that Defendants paid them by check; however, they contend that the checks did not reflect any withholdings and did not include any documentation indicating their hours worked or their hourly rate of pay.  (D.E. 42 ¶ 9; D.E. 43 ¶¶ 8, 10–13; D.E. 45 ¶¶ 8–9.)  Arriaga, Cruz Vargas, and Jerez each claim that other co-workers complained to them about Defendants' failure to pay overtime.  (D.E. 42 ¶¶ 15–20; D.E. 43 ¶¶ 19–23; D.E. 45 ¶¶ 13–17.)

Plaintiff Andres, a former truck driver for Defendants (D.E. 44 ¶ 1–2), submitted a Declaration in which he similarly alleges that:  he worked for Defendants for more than 40 hours per week without receiving overtime pay, (*id.* ¶¶ 4–6, 9); he was "paid by check and the check did not include withholdings," (*id.* ¶ 7); and he had conversations with several of Defendants' employees who indicated that they also had not been paid for overtime, (*id.* ¶¶ 11–15).

On February 1, 2022, Plaintiffs filed the initial Complaint.  (D.E. 1.)  On August 10, 2022, Plaintiffs amended the complaint, and therein, Plaintiffs allege that Defendants failed to compensate them, and others similarly situated, for overtime work as required by the FLSA, 29 U.S.C. § 201, *et seq.*; the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56 *et seq.*; and the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1, *et seq.*  (*See generally* D.E. 32.)  Plaintiffs claim that Defendants had a corporate policy of minimizing labor costs through willful violations of the FLSA's overtime wage and record-keeping requirements.  (*Id.* ¶ 37–38.)  Specifically, Plaintiffs contend that Defendants paid employees using checks without notations as to the hours worked, the rate of pay, or any other explanation of how employees' pay was calculated, (*id.* ¶ 43), and that these checks systematically failed to compensate employees for overtime hours, (*id.* ¶¶ 37-38, 41).  Shortly after filing the

3

Amended Complaint, Plaintiffs filed the instant motion for conditional certification of the collective action pursuant to Section 216(b) of the FLSA, and court-authorized notice to prospective class members. (D.E. 47.) The parties timely briefed the Motion.

## II. LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk (Symczyk II)*, 569 U.S. 66, 69 (2013). Accordingly, under the FLSA, employees who work in excess of forty hours per week are entitled to overtime compensation "at a rate not less than one and one-half times the regular rate at which he [or she] is employed." 29 U.S.C. § 207(a). If an employer violates the FLSA, Section 216(b) "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated.'" *Symczyk II*, 569 U.S. at 69 (quoting 29 U.S.C. § 216(b)). "A suit brought on behalf of other employees is known as a 'collective action.'" *Id.* (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989)).

When determining whether plaintiffs may proceed as a collective action under the FLSA, courts in the Third Circuit "follow a two-step process." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (citing *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 535 (3d Cir. 2012)). The first step, "so-called conditional certification," *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016), requires named plaintiffs to make "a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Camesi*, 729 F.3d at 243 (quoting *Zavala*, 691 F.3d at 536 & n.4). Though "[t]he term 'similarly situated,' . . . is not defined by the FLSA or the supporting regulations," *Gui Hua Ding v. Baumgart Rest., Inc.*, No. 18-10358, 2020 WL 7768387, at *3 (D.N.J. Dec. 30, 2020) (citing *Ruffin v. Avis Budget Car Rental, LLC*, No. 11-1069, 2014 WL 294675, at *2 (D.N.J. Jan 27, 2014)), the Third Circuit has

4

explained that plaintiffs need only "produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Zavala*, 691 F.3d at 536 n.4 (quoting *Symczyk v. Genesis HealthCare Corp.* (*Symczyk I*), 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds by Symczyk II*, 569 U.S. 66). If plaintiffs satisfy this "fairly lenient" burden, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery."[4] *Camesi*, 729 F.3d at 243 (quoting *Zavala*, 691 F.3d at 536 & n.4).

"[W]hile courts often borrow language from the class action context when discussing the 'certification' of a collective action, that is a misnomer." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 376 (3d Cir. 2022). Indeed, "[t]he difference between the language of § 216(b) and Rule 23 is striking . . . [and] the[] two provisions 'bear little resemblance to each other.'" *Id.* (quoting *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir. 2020)). Importantly, "[t]he sole consequence of conditional certification [in an FLSA collective action] is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court." *Id.* (second alteration in original) (quoting *Symczyk II*, 569

---

[4] Courts usually consider conditional certification after the parties have engaged in limited discovery. *See, e.g.*, *Goodman v. Burlington Coat Factory*, No. 11-4395, 2012 WL 5944000, at *1–2 (D.N.J. Nov. 20, 2012). The second step—which is not at issue here—typically occurs after the close of full discovery. *See Camesi*, 729 F.3d at 243 ("At the second stage, with the benefit of discovery, 'a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'" (quoting *Symczyk I*, 656 F.3d at 193)). At that stage, courts apply a "stricter standard" to determine whether the plaintiffs are, in fact, similarly situated by "consider[ing] all the relevant factors and mak[ing] a factual determination on a case-by-case basis." *Zavala*, 691 F.3d at 535–36. While case specific, the relevant factors may include whether employees have the same job description, are subject to the same compensation plan, received the same training, or whether they advance similar claims and seek substantially the same form of relief. *Id.* at 536–37. Plaintiffs must establish by a preponderance of the evidence that they are similarly situated. *Id.* at 537. In addition, just because a class was conditionally certified at the first step does not mean that the class will also be certified at the second step. *See, e.g.*, *Adami v. Cardo Windows, Inc.*, No. 12-2804, 2016 WL 1241798, at *5–11 (D.N.J. Mar. 30, 2016) (decertifying class at second step because plaintiff failed to establish that he was similarly situated to other employees). If plaintiffs satisfy their burden at the second step, "the case may proceed to trial as a collective action." *Symczyk I*, 656 F.3d at 193.

5

U.S. at 75). Further, "the text, history, and weight of the case law uniformly supports the view that FLSA collective actions are fundamentally different from Rule 23 class actions." *Id.* at 380. Accordingly, this Court "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Id.* (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 393 (2008)).

### III. ANALYSIS

#### A. Conditional Certification

Plaintiffs seek to conditionally certify a class of ALHC and 2SH Services truck drivers and helpers. As explained earlier in this Opinion, Plaintiffs must make a "'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 681 (D.N.J. 2014) (quoting *Camesi*, 729 F.3d at 243). Plaintiffs are not required to show that their positions are identical to the position of other potential class members. Rather, as noted, Plaintiffs must "produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Id.* (alteration in original) (quoting *Symczyk I*, 656 F.3d at 193). In considering whether to conditionally certify a class, courts should consider "all relevant factors and make a factual determination on a case-by-case basis," *id.*, however, courts should not assess the merits of either a plaintiff's claims or a defendant's defenses during the conditional certification stage. *See Goodman*, 2012 WL 5944000, at *5–6. "A showing that opt-in plaintiffs bring the same claims and seek the same form of relief has been considered sufficient for conditional certification." *Id.* (quoting *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 570 (D.N.J. 2014)).

6

Here, Plaintiffs have sufficiently made a modest factual showing that the employees identified in the Amended Complaint are similarly situated. Plaintiffs allege that they each served as a truck driver or helper for Defendants (D.E. 42 ¶ 2; D.E. 43 ¶ 4; D.E. 44 ¶¶ 1–2; D.E. 45 ¶ 2), and that, in their respective roles, they regularly worked over 40 hours per week, (D.E. 42 ¶¶ 4–7; D.E. 43 ¶¶ 5–7; D.E. 44 ¶¶ 4–6; D.E. 45 ¶¶ 4–6). Plaintiffs assert that they received the same amount of pay regardless of the hours they worked, and that each paycheck did not include withholdings or any documentation explaining how their pay was calculated. (D.E. 32 ¶¶ 71–81, 95–99, 101, 104–05, 119–22, 124–25; D.E. 42 ¶¶ 9, 12; D.E. 43 ¶¶ 8–14; D.E. 44 ¶¶ 7–9; D.E. 45 ¶¶ 7–10.) Each Plaintiff similarly contends that they were not paid overtime for work completed above forty hours per week, and as a result they each seek the same relief. (D.E. 32 ¶¶ 61, 75–76, 89–90, 97–98, 113–14, 121–22; D.E. 42 ¶ 12; D.E. 43 ¶ 10, 12; D.E. 44 ¶ 9; D.E. 45 ¶ 9.) Plaintiffs also state that they have had conversations with other similarly situated employees, who have discussed Defendants pattern of willful violations of the FLSA's overtime wage and record-keeping requirements. (D.E. ¶¶ 37–38; D.E. 42 ¶¶ 15–20; D.E. 43 ¶ 19–23; D.E. 44 ¶ 11–16; D.E. 45 ¶¶ 13–17.) In sum, they allege the same harm, bring the same claims, and seek the same relief. *See Maddy*, 59 F. Supp. 3d at 681 ("A showing that opt-in plaintiffs bring the same claims and seek the same form of relief has been considered sufficient for conditional certification." (quoting *Pearsall-Dineen*, 27 F. Supp. 3d at 570 (D.N.J. 2014)). Plaintiffs, therefore, have made "'a modest factual showing' that the employees identified in [the Amended Complaint] are 'similarly situated.'" *Camesi*, 729 F.3d at 243 (citation omitted); *see also Ying Yang v. Village Super Market, Inc.*, No. 18-10486, 2019 WL 1275059, at *3–4 (D.N.J. Mar. 20, 2019) (concluding that the plaintiff's declaration, which listed three other similarly situated employees, and an additional employee's declaration provided sufficient evidence to conditionally certify an FLSA class).

Defendants, however, contest the meaning of "similarly situated," and they argue that, because Plaintiffs Arriaga, Jerez, Mejia, and Ever Cruz never signed the Independent Contractor Agreement ("ICA"), any additional class members can include only persons who similarly did not sign the ICA.[5] (D.E. 50 at 9–11.) At this stage, that argument is without merit. While the second step of the class certification analysis requires "courts [to] make 'a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiffs,'" *Maddy*, 59 F. Supp. 3d at 681 (quoting *Symczyk I*, 656 F.3d at 193), at the conditional-certification step, courts apply a "fairly lenient standard," which Plaintiffs have satisfied, *id.* (quoting *Camesi*, 729 F.3d at 243). Moreover, Defendants have not articulated any basis to show that persons who did not sign the ICA are distinct from those who did, nor have they cited any legal authority on this point. Indeed, Defendants claim that, while the named Plaintiffs "did not sign the [ICA,] . . . they orally agreed to the terms written in the ICAs." (D.E. 50 at 9.) By Defendants' argument, then, those who did and did not sign the ICAs are all bound by its terms, and thus the only difference is the signature itself. Such an inconsequential distinction does not defeat Plaintiffs' showing that the proposed collective is similarly situated. Consequently, this Court will conditionally certify the collective action.

### B. Class Notice

Plaintiffs request court-authorized notice in connection with the collective action, and Defendants do not oppose either the method or substance of such notice.[6] Although there is no express provision in the FLSA pertaining to court-facilitated notice to potential opt-in plaintiffs,

---

[5] Defendants also initially argued that conditional certification under the FLSA is inappropriate because Plaintiffs have failed to meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1). On March 20, 2023, Defendants waived their numerosity argument, (D.E. 82), and therefore this Court need not address it at this stage.

[6] Defendants' only argument on this point is that the notice should be amended to exclude employees who did sign the ICA. (D.E. 50 at 9–10.) As explained above, this argument is rejected.

8

district courts have discretion to authorize and facilitate notice to potential class members in cases under Section 216(b).  *See Hoffman-La Roche Inc.*, 493 U.S. at 171.[7]  In *Hoffman-La Roche*, the Supreme Court stated that the "benefits [of collective actions] . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action."  *Id.*  As a result, the Supreme Court concluded that trial courts are responsible for ensuring that the joinder of additional plaintiffs is accomplished in an efficient manner.  *Id.* at 170–71.  In facilitating notice, however, "courts must be scrupulous to respect judicial neutrality" as it pertains to the merits of the action.  *Id.* at 174.

      Plaintiffs argue that this Court should order Defendants to produce a list of "all non-managerial workers who were employed at Defendants . . . at any point in the three years prior to the filing of this lawsuit along with the following information:  name, last known mailing address, alternate address (if any), all known telephone numbers, e-mail account, and dates of employment at Defendants."  (D.E. 47 at 18–19.)  Defendants have not objected to this request, and in any event, courts presiding over FLSA collective action cases routinely order defendant-employers to produce to plaintiffs a list of potential class members.  *See, e.g.*, *Pearsall-Dineen*, 27 F. Supp. 3d at 574; *Gervasio v. Wawa Inc.*, No. 17-245, 2018 WL 385189, at *5–6 (D.N.J. Jan. 11, 2018).  Therefore, this Court will order Defendants to provide a list containing the names, last-known mailing address, last-known email address, all known telephone numbers, and dates of

---

[7] *Hoffman-La Roche* involved an age discrimination class under the ADEA, "which incorporates enforcement provisions of the FLSA."  493 U.S. at 167 (internal citation omitted).

employment with Defendants for all persons who have performed services on behalf of Defendants as truck drivers or helpers[8] from February 1, 2019, to the present.[9]

Plaintiffs request various methods of notice, which Defendants again do not oppose. (*See* D.E. 69-1.) As requested, this Court will permit notice to be sent by First-Class U.S. Mail, email, and text message. Plaintiffs may also send one reminder postcard and up to two reminder emails and/or text messages to potential plaintiffs. Defendants will also be required to post the FLSA notice at their places of business in a location where potential plaintiffs are likely to view it.

In connection with the Motion, Plaintiffs have submitted a proposed notice form, which Defendants have not opposed. (D.E. 41 at 4–13.) This Court has independently reviewed the notice and does not see any deficiencies. As such, this Court will permit Plaintiffs' proposed form of notice. Plaintiffs may also send the notice form in both English and Spanish.

## IV.   CONCLUSION

For the foregoing reasons, and for good cause shown, Plaintiffs' Motion is **GRANTED**. An appropriate Order follows.

    /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

---

[8] While Plaintiffs request information for "all non-managerial workers," (D.E. 47 at 18–19), the proposed notice form is only addressed to truck drivers and helpers, (D.E. 41 at 5). Moreover, because this Court has granted Plaintiffs' motion to certify the collective action only as to truck drivers and helpers, the list that Defendants must produce is limited to those two groups.

[9] Courts regularly extend the opt-in period to three years before the Complaint was filed, rather than two, when a plaintiff sufficiently alleges that the Defendants acted willfully. Employers willfully violate the FLSA when they either "knew" or "showed reckless disregard for the matter." *Gui Hua Ding*, 2020 WL 7768387, at *6 (citing *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 126 (3d Cir. 2017)). Here, Plaintiffs allege that Defendants have "intentionally, willfully and repeatedly harmed Plaintiffs and the FLSA collective by engaging in a pattern and/or policy of violating the FLSA." (D.E. 32 ¶ 37.) According to Plaintiffs, Defendants had a "corporate policy of minimizing labor costs" through FLSA violations, including by "failing to pay employees the applicable overtime rate for all time worked in excess of 40 hours per week" and "failing to keep adequate records of hours worked by employees as required by the FLSA." (*Id.* ¶¶ 37–38.) Plaintiffs also allege that Defendants paid their employees without providing any information as to the rate of pay, number of hours worked, or how their pay was being calculated. (*Id.* ¶ 43.) This Court finds the allegations in the Amended Complaint are sufficient to allege that Defendants' violations of the FLSA were willful, and thus sufficient to extend the opt-in period to three years before the initial Complaint was filed—*i.e.*, to February 1, 2019.

Orig:       Clerk
cc:         Leda D. Wettre, U.S.M.J.
           Parties